STATE, Respondent v. GOODE, Appellant

(171 N.W.2d 733)

(File No. 10554.   Opinion filed November 5, 1969)

**James Abourezk,** Rapid City,, **William M. Kunstler,** New York City for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Edward M. Blando,** Asst. Atty. Gen., Pierre, **James Wilson,** Pennington County State's Atty., Rapid City, for plaintiff and respondent.

HANSON, Judge.

Following the death of Donna Jean Austin's infant son in Rapid City on October 6, 1966, Mrs. Austin and the defendant,

Ronnie O. Goode, were separately charged with the crime of Manslaughter In The First Degree. On arraignment both defendants were determined to be indigent and the same attorney was appointed as counsel for their defense. Separate trials were held and both defendants were found guilty as principals of the crime charged. Goode was sentenced to serve twenty-five years in the State Penitentiary. He appeals.

The dominant issue is whether Goode was denied a fair trial by assigned counsel's conflict of interest arising from representation of dual defendants charged with the same crime. The competency, ability, and diligence of assigned counsel is not otherwise seriously challenged.

■■ The Sixth Amendment to the United States Constitution guarantees that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense". This right to counsel is now extended to and made obligatory upon all the states through the due process clause of the Fourteenth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733; Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, reh. den. 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377; and State v. Buffalo Chief, 83 S.D. 131, 155 N.W.2d 914. As this court explained in State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N.W.2d 712, the constitutional right of an accused to defend with the assistance of counsel "means adequate and effective assistance and the trial court has the duty to appoint competent counsel to represent and advise an indigent accused. A mere perfunctory and casual representation does not satisfy the constitutional guaranty. State ex rel. Parker v. Jameson, 75 S.D. 196, 61 N.W.2d 832. The attorney's obligation and duty to his client is, and must be, the same whether he is paid much or little or nothing at all."

■ In Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, defendant Glasser's conviction was reversed because his retained counsel was assigned by the court over Glasser's objection to represent an indigent codefendant. The court

said the assistance of counsel guaranteed by the "Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. * * * Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court."

The rule forbidding an attorney to represent conflicting interests is not new. It is based on the ancient admonition that "No man can serve two masters." Individual lawyers, therefore, as well as courts, have a duty to avoid such conflicting relationships and representations. According to Canon 6 of the American Bar Association's Canons of Professional Ethics "It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." Also see Canon 5 of the New Code of Professional Responsibility enacted at the 1969 meeting of the American Bar Association to become effective January 1, 1970.

The mere fact one attorney is assigned or retained to represent multiple defendants is not, in itself, a denial of effective assistance of counsel. This is especially true with reference to counsel retained by an accused. Our constitution guarantees an accused "the right to defend in person and by counsel." Art VI, § 7. We have construed this to mean an accused has a constitutional right to defend by counsel of his own choice, State ex rel. Pekarek v. Erickson, 83 S.D. 79, 155 N.W.2d 313, and it is not the responsibility of the court to exercise any control over the selection of counsel by an accused. The present day quandary of our courts in this respect is illustrated in the recent case of State v. Buffalo Chief, 83 S.D. 131, 155 N.W.2d 914,

in which defendants Buffalo Chief, Little, and Gayton were charged with the crime of murder. Gayton retained a prominent attorney for his defense. At the request of Buffalo Chief and Little the trial court appointed separate counsel to conduct their defenses. Before the preliminary hearing Buffalo Chief and Little elected to and did employ the same counsel previously retained by Gayton. The two court-appointed counsel were then discharged and released from their assignments. Defendant Little later retained another lawyer of his choice. Buffalo Chief was found guilty of manslaughter. On appeal, among other things, he contended he was denied effective assistance of his retained counsel because of conflict of interest arising from his representation of a codefendant. We denied relief.[1]

When a single attorney is assigned to represent codefendants in a criminal prosecution there must be an actual conflict of interest arising from the dual representation in order to constitute a denial of an accused's right to the effective assistance of counsel. However, the right of an accused to have the assistance of effective counsel **"is too fundamental and absolute to allow courts** to indulge in nice calculations as to the amount of prejudice arising from its denial." Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Baker v. State, Fla., 202 So.2d 563.

In the present action it appears that Donna Jean Austin was a white woman about thirty-one years of age who had been married five times. Her last husband was James Austin. Her fourth husband was Robert Doty and they had a son, William L. Doty, born March 31, 1964. During September and October, 1966, Mrs. Austin lived separate and apart from her husband in a unit of the Rosebud Motel in Rapid City with her infant son, William. She was employed by the owners of the motel as a cleaning maid. The defendant, Goode, was a twenty-year-old Negro air force policeman. During September and October 1966 he was a steady visitor in Mrs. Austin's home.

---

1. However, see Application of Buffalo Chief, D.C., 297 F.Supp. 687.

At the trial of Mrs. Austin, Goode was called to testify by their jointly assigned counsel. Although advised by the court of his constitutional right to refuse to testify to any matter which might tend to incriminate him, Goode testified fully and in detail about his relationship with Mrs. Austin and his care and handling of the deceased child. He related how he took care of the child while Mrs. Austin worked. He admitted using physical force as disciplinary measures. On the day of the child's death he admitted shaking the child shortly after which the boy was rushed to the hospital and died. His testimony could serve but one purpose—to deflect the glare of guilt away from Mrs. Austin. Apparently it was not intended or anticipated the state would or could use his testimony against him at his trial.

The dilemma of defense counsel is illustrated in the following occurrence during the course of Goode's direct examination at the Austin trial. In response to defense counsel's questioning Goode was relating how on one occasion the Doty child had refused to obey an order and was being defiant. Goode testified he put the child over his knee and "swatted him twice with my hand". At this point his counsel moved to strike the statement as it might tend to "incriminate this defendant in a later charge against him." The court denied the motion and counsel stated: "That's all right. I'm making the motion. Of course, I am trying to defend this defendant, as well. All right. Now, you understand, Ron, you don't need to say anything, but you can, if you wish, say everything. But you understand that you are supposed to say what Donna did. This charge is against Donna. * * * Go ahead and tell us the whole thing; or tell us what you want to."

During Goode's subsequent trial his prior testimony in the Austin case was read into the record. This evidence was very incriminating and damaging. It fulfilled the State's burden of proof as to certain elements of the crime charged which were not otherwise proven.

There was an actual conflict of interest arising in this case which impaired assigned counsel's effective assistance. At best

the assigned counsel was forced to follow middle-of-the-road trial strategy in an effort to protect and defend persons with conflicting and opposing interests. He could not always contend for that which duty to another client required him to oppose. No attorney should be placed in a position of divided loyalty "where he may be required to choose between conflicting duties or to be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the party whom he should alone represent." Commonwealth ex rel. Whitling v. Russell, 406 Pa. 45, 176 A.2d 641. Under the circumstances, we conclude defendant was denied his constitutional right to the effective assistance of counsel.

As the other assigned errors are not likely to reoccur on retrial they are not discussed.

Reversed.

All the Judges concur.

BIEGELMEIER, Presiding Judge (concurring).

At the trial of the criminal action against Mrs. Austin before defendant testified, in fairness to the presiding Judge I add the record shows he advised defendant of his rights in the following words:

" 'By the Court: However, would you come forward, just a moment, Mr. Goode. I wish to advise you of your rights. Now before you are sworn as a witness in this case, or take the witness stand, Mr. Goode, I want to advise you that you have the right to refuse to answer any questions, the answer to which may tend to incriminate you, and any time that you desire to exercise that privilege, do so by stating that—in response to a question, just state that you refuse to answer the question on the grounds that it might tend to incriminate you, and, of course, I'd permit your counsel to prompt you to make that statement at any time he an-

ticipates a question would be put to you that—of a nature that you should not answer for that reason, and so I want you to fully understand that, and understand that any testimony you give here today can be used against you. You understand that?

" 'By Mr. Goode: Yes, I do.' "

As I read the opinion the court holds when the same lawyer is appointed for two defendants and one defendant in a separate trial gives testimony on behalf of, and in aid to the other, but damaging to himself, he is constitutionally denied effective assistance of counsel, even though advised by the court of his right to refuse to answer questions and that his answers could be used against him. Assuming as I believe the opinion concludes, defendant's decision to proceed with one attorney and consent to continue with him as his attorney and to then testify to his prejudice in that action was not an "informed decision", I concur in the opinion that the conviction cannot stand. Campbell v. United States, 122 U.S.App.D.C. 143, 352 F.2d 359 (1965). Without that assumption, this question would necessarily be one for determination in a post-conviction proceeding. Ch. 23-52 SDCL 1967.