# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 13, 2013          Decided March 25, 2014

No. 09-3117

UNITED STATES OF AMERICA,
APPELLEE

v.

DANIEL WRIGHT,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:92-cr-00131-1)

---

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Lauren R. Bates*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Angela G. Schmidt*, Assistant U.S. Attorneys. *Elizabeth H. Danello*, Assistant U.S. Attorney, entered an appearance.

Before: GRIFFITH and KAVANAUGH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In this case, Daniel Wright appeals from his conviction by guilty plea. We affirm.

In 1992, Daniel Wright, Antoine Washington, and Glen Early, Jr., were arrested following a high-speed car chase through the streets of Washington, D.C. The police found drugs in the car in which the three men were traveling. All three were indicted and charged with possession with intent to distribute cocaine. Washington and Early went to trial later that year and were convicted and sentenced to 12 years and 7 months in prison and 14 years and 6 months in prison, respectively. *See United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994). But Wright disappeared before trial after having been released on bail.

Wright was eventually caught and brought back to the District of Columbia in 2008 to face the 1992 drug charges. Attorney Douglas Wood was appointed to represent Wright. A few weeks after his appointment, Wood recalled that he had previously represented Washington in Washington's appeal (albeit not at Washington's trial). Wood recognized that his prior representation of Washington might result in a conflict of interest in his representation of Wright. Wright soon also became aware of the potential conflict, but he did not object to Wood's continued representation. Although Wood continued to represent Wright during several months of plea negotiations, Wood brought in conflict-free counsel Jenifer Wicks to consult with Wright before and during the entry of his guilty plea. Wright eventually pled guilty to one count of possession with intent to distribute cocaine. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C). He was sentenced to eight years in prison.

Wright now appeals. He claims that Wood's prior representation of Washington created an impermissible conflict of interest.

A defendant asserting an ineffective assistance of counsel claim must show (1) that defense counsel's performance was deficient and (2) that counsel's deficient performance affected the outcome of the defendant's case. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Conflict of interest claims such as that asserted by Wright in this case are a "specific genre" of ineffective assistance of counsel claim. *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996). In *Cuyler v. Sullivan*, the Supreme Court held that a defendant who asserts a conflict of interest claim on appeal or in habeas proceedings generally must demonstrate only that an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. 335, 348 (1980). The defendant typically need not demonstrate the second prong of the *Strickland* test – that the lawyer's deficient performance affected the outcome of the case. *See id.* at 349-50.

In *Cuyler v. Sullivan*, the conflict of interest had been caused by the defense attorneys' *concurrent* representation of multiple clients in the same case. In this case, Wood's representation of Washington apparently ended before Wood's representation of Wright began. Wright's claim therefore may involve a conflict caused by *successive* representation of multiple clients in the same matter. In *Mickens v. Taylor*, the Supreme Court explained that the language of *Cuyler v. Sullivan* "itself does not clearly establish, or indeed even support," applying the *Cuyler v. Sullivan* standard "unblinkingly" to cases involving successive representation of multiple clients. 535 U.S. 162, 174-75 (2002). But the Court ultimately did not decide the question of whether *Cuyler v. Sullivan* applied to cases of

successive representation, saying that the question remained "open." *Id.* at 176.

Since *Mickens*, this Court has likewise not decided whether the *Cuyler v. Sullivan* standard applies to cases involving successive representation. *See United States v. Berkeley*, 567 F.3d 703 (D.C. Cir. 2009).

Here, we again need not decide that question. Even under the *Cuyler v. Sullivan* standard, Wright still has to demonstrate that Wood's alleged conflict of interest adversely affected his performance. Wright has not done so. Wright claims that Wood's performance was defective because Wood allegedly coerced Wright into pleading guilty. But the record conclusively shows that Wright's guilty plea was voluntary, not coerced. Three pieces of record evidence make that clear:

*First*, six months before Wright's guilty plea, Wood recognized that a conflict might arise if Washington was a witness in Wright's trial. *See* Tr. Status Hearing at 9, Jan. 7, 2009. To address the possible conflict, Wood enlisted conflict-free counsel, Jenifer Wicks, to "consult with Mr. Wright and to be present" before and during the entry of his guilty plea. Tr. Plea Hearing at 3, July 2, 2009. During the plea hearing, Wicks stated that she had talked with Wright about the range of sentences that Wright could face by pleading guilty. Wicks and Wright each signed the Government's plea agreement, statement of offense, and waiver of trial by jury forms. Conflict-free counsel's prominent role in the plea discussions and in Wright's decision to enter a plea belies Wright's claim that he was coerced by Wood into entering the plea.

*Second*, during the plea colloquy, Wright made clear that he understood the ramifications of his guilty plea and was voluntarily choosing to plead guilty. Wright stated that he

had read his plea agreement and had reviewed it with his attorneys. *Id.* at 7. Wright admitted that he had possessed powder and crack cocaine. *Id.* at 14. Wright confirmed that nobody had "forced," "pressured," or "coerced" him "in any way" into pleading guilty. *Id.* at 14-15. Wright stated that he was "pleading guilty voluntarily" and of his "own free will." *Id.* at 15. Those statements, made in Wood's absence, contradict Wright's current contention that he pled guilty because of Wood's coercion.

*Third*, after his plea and in advance of sentencing, Wright submitted a letter to the District Court. Wright's letter confirmed that his choice to plead guilty had been voluntary. Wright wrote that he "wanted to explain" his decision and "why" he had chosen to plead guilty. Letter from Daniel Wright to Judge James Robertson at 1, *United States v. Wright*, No. 92-cr-00131 (D.D.C. Oct. 14, 2009). Wright acknowledged his role in the conduct underlying his offense and admitted that he had been on a self-destructive path and that it was time to face the consequences of his actions. *See id.* The next day, in open court, Wright again apologized to the District Court for his conduct. *See* Tr. Sentencing Hearing at 17, Oct. 15, 2009. Those candid and unsolicited admissions further contravene Wright's claim that Wood coerced him to plead guilty.

Because the record conclusively rebuts Wright's claim of ineffective assistance of counsel, we affirm the judgment of conviction. *See United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013).

*So ordered.*